## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CAMERON B. AUXER,** an individual**,** *et al.* | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 2:09cv995 **Electronic Filing** |
| **ALCOA, INC.,** | ) ) | |
| Defendant. | ) ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **ANGELINA FERRARO ANGI,** *et al.* | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 2:09cv1429 **Electronic Filing** |
| **ALCOA, INC.,** | ) ) | |
| Defendant. | ) ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **TERRENCE APLIN,** *et al.* | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 2:09cv1430 **Electronic Filing** |
| **ALCOA, INC.,** | ) ) | |
| Defendant. | ) ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **FRANK BELLAIRS,** *et al.* | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 2:09cv1431 **Electronic Filing** |
| **ALCOA, INC.,** | ) ) | |
| Defendant. | ) ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **CLIVE BARRADEEN,** *et al.* | ) ) | |
| vs. | ) ) | 2:09cv1438 **Electronic Filing** |
| **ALCOA, INC.,** | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

March 29, 2010

**I.    INTRODUCTION**

On June 5, 2009, Plaintiffs filed a Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, captioned *Cameron B. Auxer, et al. v. Alcoa, Inc.*, Case No. GD-09-010359 (the "*Auxer* Complaint" or "*Auxer*"), seeking recovery for injuries allegedly caused by exposure to emissions from the Wagerup alumina refinery owned and operated by Alcoa of Australia Limited ("AAL"), an Australian corporation, in Western Australia.  At the time of the alleged exposure and resulting injuries, the Plaintiffs of the *Auxer* Complaint resided in Western Australia.  At the time of the filing of this lawsuit, nine (9) of the ten (10) Plaintiffs in this action were residents of Australia.  On July 31, 2009, Alcoa removed the *Auxer* Complaint to this Court pursuant to 28 U.S.C. § 1441(b).  Alcoa then filed a Motion to Dismiss on Grounds of *Forum Non Conveniens* and a Motion to Dismiss for Failure to State a Claim. Plaintiffs filed a Motion to Remand to State Court.

On September 28, 2009, the following Complaints were filed in the Court of Common Pleas of Allegheny County, Pennsylvania: *Angelina Ferraro Angi, et al. v. Alcoa, Inc.*, Case No. GD-09-010494 ("*Angi*"); *Terrence Alpin, et al. v. Alcoa, Inc.*, Case No. GD-09-010373 ("*Alpin*"); *Frank Bellairs, et al. v. Alcoa, Inc.*, Case No. GD-09-010424 ("*Bellairs*"); and *Clive Barradeen, et al. v. Alcoa, Inc.*, Case No. GD-09-010375 ("*Barradeen*")(collectively with *Auxer*, the "Complaints").  Similar to the Auxer Complaint, Plaintiffs in these actions are seeking recovery for injuries allegedly caused by exposure to emissions from alumina refineries owned and operated by AAL in Australia.  On October 26, 2009, Alcoa removed the *Angi*, *Alpin*, *Bellairs* and *Barradeen* actions to this Court.

On November 19, 2009, this Court issued an Order consolidating the *Auxer*, *Angi*, *Alpin*, *Bellairs* and *Barradeen* actions (the "Consolidated Actions"). Alcoa then filed a Motion to Dismiss on Grounds of *Forum Non Conveniens* and a Motion to Dismiss for Failure to State a

2

Claim in each of the *Angi*, *Alpin*, *Bellairs* and *Barradeen* actions, and Plaintiffs filed their Motions to Remand. All parties have responded to the above motions, and the motions are now before the Court.

## II.   STATEMENT OF THE CASE

Plaintiffs' actions arise out of the  operation of three (3) alumina refineries in Western Australia, the Wagerup refinery, the Kwinana refinery and the Pinjarra refinery.  Plaintiffs allege that Alcoa has a sixty percent (60%) ownership in AAL, the Australian corporation that owns and operates the refineries, and that  Alcoa "controlled, directed and was ultimately responsible for" AAL's operation of the refineries. *Auxer* Complaint ¶¶ 11, 17, 23; *Angi* Complaint ¶¶ 199, 200; *Alpin* Complaint ¶¶ 32, 33; *Bellairs* Complaint ¶¶ 31, 32; *Barradeen* Complaint ¶¶ 19, 20. All of the Plaintiffs alleging injury, except Cameron Auxer, are residents of Australia.  *Auxer* Complaint ¶¶ 1-10; *Angi* Complaint ¶¶ 1-187; *Alpin* Complaint ¶¶ 1-21; *Bellairs* Complaint ¶¶ 1-19; *Barradeen* Complaint ¶¶ 1-7.

The Wagerup refinery is located eighty (80) miles south of Perth in Western Australia and began operations in or about 1984. *Auxer* Complaint ¶¶ 23, 45; *Angi* Complaint ¶ 576; *Bellairs* Complaint ¶ 88.  The Pinjarra refinery began operations in 1972 (*Barradeen* Complaint ¶ 19), and the Kwinana refinery began operations in 1963. *Alpin* Complaint ¶ 76.  At the refineries, alumina is produced by initially grinding the bauxite into small particles, which is then mixed under pressure with a hot caustic soda solution to dissolve the aluminum oxide. *Auxer* Complaint ¶ 47; *Angi* Complaint ¶ 577*; Alpin* Complaint ¶ 77; *Bellairs* Complaint ¶ 89; *Barradeen* Complaint ¶ 36. The refining process which includes liquor burning, calcination and operation of oxalate kilns, cause harmful pollutants to be released into the environment. *Auxer* Complaint ¶ 51; *Angi* Complaint ¶¶ 578, 583*; Alpin* Complaint ¶¶ 80, 81; *Bellairs* Complaint ¶¶ 90, 95; *Barradeen* Complaint ¶ 37, 39. At the conclusion of the refining process, the alumina is retained for making aluminum and the bauxite residue is deposited and stored in Residue Disposal Areas

3

("RDA"), which are open drying areas located several hundred yards from the refineries. *Auxer* Complaint ¶ 48; *Angi* Complaint ¶¶ 577-579; *Alpin* Complaint ¶¶ 77-80; *Bellairs* Complaint ¶¶ 89-91; *Barradeen* Complaint ¶ 36-38.

Plaintiffs allege that the location of Wagerup refinery negatively affects the dispersal of the pollutants emanating from the refinery. *Auxer* Complaint ¶ 49. Due to the climatological and atmospheric conditions, some of which relate to the Darling Escarpment, an inversion layer is produced and the harmful pollutants from the Wagerup refinery become trapped at or near ground level for extended periods of time. *Auxer* Complaint ¶¶ 49, 50. This results in high and unsafe ground level concentrations of toxic compounds on the communities near the Wagerup refinery. *Auxer* Complaint ¶¶ 49.

Plaintiffs in these actions allege that they live or lived in the vicinity of the alumina refineries, or that they worked in one or more of the refineries, and that they sustained an injury caused by emissions from the refineries. The Plaintiffs seek recovery from Alcoa on theories of negligence, strict liability and reckless conduct. *See generally* the Complaints.


**III.   DISCUSSION**

Plaintiffs implore the Court to remand the Consolidated Actions to the state court arguing that this Court does not have subject matter jurisdiction. Alcoa asks this Court, instead, to follow the instructions of the United States Supreme Court in *Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007), in which the Court explained: "[a] district court may dispose of an action by a *forum non conveniens* dismissal, by-passing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 432.

In the alternative, Alcoa argues that this Court has subject matter jurisdiction of the Consolidated Actions pursuant to the "mass action" provisions of the Class Action Fairness Act

of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2), 1332(d)(11) and 1453[1]. Alcoa argues that the *Angi* action, which involves 187 plaintiffs, satisfies the unambiguous requirements of a mass action under CAFA, therefore this Court has jurisdiction over the state law claims asserted in the *Angi* action[2]. Contending that Plaintiffs have artificially structured the Consolidated Actions to avoid federal jurisdiction, Alcoa further argues that because *Angi* satisfies the requirements of CAFA, this Court must retain jurisdiction over the *Auxer*, *Alpin*, *Bellairs* and *Barradeen* actions.

Application of the mass action provisions of CAFA to the facts presented by the Consolidated Actions is a question of first impression in the Third Circuit. Moreover, there is a split among the circuits regarding the proper exercise of federal jurisdiction under CAFA when plaintiffs have allegedly structured their actions in order to avoid subject matter jurisdiction in the federal courts. *See Freeman v. Blue Ridge Paper Prods.*, 551 F.3d 405, 408 (6th Cir. 2008)(finding no colorable basis for dividing an action for nuisance in the form of water pollution from a paper mill into five separate lawsuits covering distinct six-month time periods other than to avoid the clear purposes of CAFA); *Proffitt v. Abbott Labs*, 2008 U.S. Dist. LEXIS 72467 at * 5-*6(E.D. Tenn. Sept. 23, 2008)(finding no reason for plaintiffs bringing eleven class actions, each alleging an anti-trust conspiracy involving one defendant and one drug, other than evading "the Congressional intent and purpose of the CAFA."); *see also Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 951 (9th Cir. 2009)(finding CAFA did not apply to seven separate state court actions alleging injuries from exposure to chemicals while working on banana and pineapple

---

[1]     Alcoa also argues that jurisdiction is proper in the District Court pursuant to 28 U.S.C. § 1332 based upon the Act of State Doctrine and the federal common law of foreign relations.

[2]     In order to establish original jurisdiction in a district under CAFA, the matter in controversy must exceed the sum or value of $ 5,000,000, exclusive of interest and costs, and must be a class action in which: "(A) any member of a class of plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state. 28 U.S.C. § 1332(d)(2).

plantations in villages on the Ivory Coast.).

Generally, courts are required to determine questions of jurisdiction before reaching the merits of a case. *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998).  A *forum non conveniens* dismissal "den[ies] audience to a case on the merits," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999); it is a determination that the merits should be adjudicated elsewhere. *See American Dredging Co. v. Miller*, 510 U.S. 443, 454 (U.S. 1994); *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148 (1988). Further, the Court has stated that a federal court has some discretion "to choose among threshold grounds for denying audience to a case on the merits." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. at 585.  The Third Circuit recognized that *forum non conveniens* "is a non-merits ground for dismissal." *See Malay. Int'l Shipping Corp. v. Sinochem Int'l Co.*, 436 F.3d 349, 359 (3d Cir.  2006).

Moreover, the Supreme Court has consistently held that there is no mandatory "sequencing of jurisdictional issues." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. at 584[3]. For example, The Supreme Court has approved of addressing venue before personal jurisdiction. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979).  In other instances, federal courts have disposed of cases before reaching the merits, and therefore, without first determining the existence of subject-matter jurisdiction, including: declining to adjudicate state-law claims, *see Moor v. County of Alameda*, 411 U.S. 693, 715-716; abstaining under the *Younger* doctrine, *see Ellis v. Dyson*, 421 U.S. 426, 433-434 (1975); dismissing lawsuits under the doctrine of *Totten v. United States*, 92 U.S. 105 (1875) (prohibiting suits against the government based upon covert espionage agreements), *see Tenet v. Doe*, 544 U.S. 1, 7 n.4 (2005); and as above-mentioned, dismissing or transferring a case based on *forum non conveniens* grounds without first addressing personal jurisdiction. *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. at 432.

---

[3]     In *Ruhrgas*, the Supreme Court approved of addressing personal jurisdiction before subject-matter jurisdiction. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. at 584-585.

The relative ease of determining *forum non conveniens* before addressing the novel, and more difficult, issues of subject-matter jurisdiction in this instance is an issue of judicial economy. Because subject-matter jurisdiction involves an arduous inquiry, "and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. at 436. Therefore, the Court will address Alcoa's motion to dismiss on grounds of *forum non conveniens*, and for the reasons set forth below, finds that Australia is the proper forum for litigation of Plaintiffs' claims, and the Consolidated Actions will be dismissed.

    A.    <u>Forum Non Conveniens</u>

*Forum non conveniens* is a common-law doctrine retained by courts to dismiss a case where that case would be more appropriately brought in a foreign court. *See Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. at 432 . Generally, it is not the role of the court to deny a plaintiff his choice of forum where the plaintiff has filed his claim in conformity with statutory and constitutional jurisdictional requirements. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981). The doctrine of *forum non conveniens*, therefore, "must be sparingly applied, inasmuch as its application results in the dismissal of a case over which the Court has jurisdiction and would ordinarily have a duty to resolve." *Am. Cyanamid Co. v. Picaso-Anstalt*, 741 F. Supp. 1150, 1155 (D. N.J. 1990) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

In a case involving international parties, the domestic plaintiff's choice of forum is generally given great deference when the plaintiff has brought suit in his home country. *Piper Aircraft Co. v. Reyno*, 454 U.S. at 255-256, n.23.  It is "reasonable to assume that this choice is convenient." *Id.* at 256.  When the plaintiff is foreign, however, the assumption is much less reasonable. *Id.* at 255-256. Courts are suspicious that a foreign plaintiff's decision to bring suit in the United States is motivated by a search for a jurisdiction with laws that would be the most

favorable for the claim[4]. *See Swift & Co. Packers v. Compania Colombiana del Caribe, S.A.*, 339 U.S. 684, 697 (1950) ("Suit by a United States citizen against a foreign respondent brings into force considerations very different from those in suits between foreigners"); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. at 249, n.15 ("dismissal may be warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to . . . take advantage of favorable law.").

The Third Circuit has stressed, however, that *Piper Aircraft* is "not an invitation to accord a foreign plaintiff's selection of an American forum no deference since dismissal for *forum non conveniens* is the exception rather than the rule."*Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 44-45 (3d Cir. 1988)) ("*Lacey I*"), *rev'd after remand*, 932 F.2d 170, 180 (1992)("*Lacey II*"). Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference. *Piper Aircraft Co. v. Reyno*, 454 U.S. at 256.  Moreover, many courts have held that where none of the operative facts of the action occurred in the plaintiff's chosen forum, the choice is afforded less weight. *See generally*, *Colantonio v. Hilton Int'l Co.*, 2004 U.S. Dist. LEXIS 15991, 9-10 (E.D. Pa. August 13, 2004); *Cameli v. WNEP-16 The News Station*, 134 F. Supp. 2d 403, 405 (E.D. Pa. 2001); *Gaskins v. Amtrak*, 2001 U.S. Dist. LEXIS 3962 (E.D. Pa. Feb. 21, 2001); *Fidelity Leasing, Inc. v. Metavec Corp.*, 1999 U.S. Dist. LEXIS 6737 (E.D. Pa. April 29, 1999)(citing *Schmidt v. Leader Dogs for the Blind, Inc.*, 544 F. Supp. 42, 47 (E.D. Pa. 1982)); *Edwards v. Texaco, Inc.*, 702 F. Supp. 101, 103 (E.D. Pa. 1988)(citing *Kogok v. Fields*, 448 F. Supp. 197, 201 (E.D. Pa. 1978));  *Leinberger v. Webster*, 66 F.R.D. 28, 34 (E.D.N.Y 1975)(citations omitted)(stating "plaintiff's choice of forum is not as rigidly adhered to if all the operative facts occurred elsewhere").

In analyzing the degree of deference due a plaintiff's choice of forum along a "sliding

---

[4]     In *Jennings v. Boeing Co.*, 660 F. Supp. 796 (E.D. Pa. 1987), the district court stated "American courts are extremely attractive to foreign plaintiffs, particularly because of more favorable tort law and more extensive discovery available in most United States courts." *Id.* at 807 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. at 252.).

scale," the Second Circuit stated:

> The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice. Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*. Thus, factors that argue against *forum non conveniens* dismissal include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense. On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons -- such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum -- the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non conveniens* motion by showing that convenience would be better served by litigating in another country's courts.

*Iragorri v. United Technologies Corp.,* 274 F.3d 65, 72 (2001).

In this instance, 243 of the 244 Plaintiffs in the Consolidated Actions reside in Australia. Only Auxer, who was allegedly exposed to harmful pollutants while a resident of Western Australia, is presently a resident of Pennsylvania.  Moreover, every Plaintiff alleges injury in Australia as a result of exposure to emissions from the operations of alumina refineries owned by an Australian corporation in Western Australia. Aside from the Plaintiffs, there are numerous non-party witnesses, who are key to the issues to be resolved in these actions, who are located more than 10,000 from the selected forum. Moreover, none of the operative facts, material to causation,  injury, diagnosis treatment, etc. occurred in Pennsylvania.  The Court finds that the selection of this forum has little to do with convenience, and that there are woefully few bona fide connections to the United States or Pennsylvania. Therefore, applying the sliding scale mentioned above, the Plaintiffs' choice of forum will be given little deference.

A court has discretion to dismiss or transfer a case on *forum non conveniens* grounds when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems. *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. at 432 . "Dismissal for *forum non conveniens* reflects a court's assessment of a range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." *Id.*  *Forum non conveniens* has been characterized as essentially "a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined." *Id.*

Determination of a *forum non conveniens* motion involves a two-step analysis. First, the defendant must establish that an adequate alternative forum exists as to all defendants. *See Piper Aircraft Co. v. Reyno*, 454 U.S. at 254; *see also Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 44 (3d Cir. 1988)) ("*Lacey I*"), *rev'd after remand*, 932 F.2d 170, 180 (1992) ("*Lacey II*").  If an adequate alternative forum exists, then the court must balance certain private and public interest factors. *See Piper Aircraft Co. v. Reyno*, 454 U.S. at 241; *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 508-509.  It is well settled that the defendant bears the burden of persuasion as to all elements of the *forum non conveniens* analysis. *See Lacey I*, 862 F.2d at 44. To prevail, a defendant must supply the court with enough information to allow the court to balance the interests of the parties. *Piper Aircraft Co. v. Reyno*, 454 U.S. at 258.  Based on the submissions of the parties, a district court must "develop adequate facts to support its decision" and "articulate specific reasons for its conclusions." *Lacey I*, 862 F.2d at 39.

B.     Adequate Alternative Forum

As a threshold matter, this Court must determine whether an adequate alternative forum is available.  *Id.* at 44. Inadequacy of the alternative forum is rarely a barrier to a *forum non*

*conveniens* dismissal. *Id.*; *Tech. Dev. Co. v. Onischenko*, 174 Fed. Appx. 117, 120 (3d Cir. 2006).  Two conditions must be satisfied to meet this  adequacy requirement: (a) the defendant must be amenable to process in the alternative forum and (b) the subject matter of the lawsuit must be cognizable in the alternative forum in order to provide the plaintiff with appropriate redress. *See Piper Aircraft Co. v. Reyno*, 454 U.S. at 254, n. 22;  *Kultur Int'l Films, Ltd. v. Covenant Gordon Pioneer*, FSP., Ltd., 860 F. Supp. 1055, 1063 (D. N.J. 1994). Both the United States Court of Appeals for the Third Circuit and the Supreme Court have noted, "the requirement of an adequate alternative forum is generally satisfied 'when the defendant is 'amenable to process' in the other jurisdiction.'" *Lacey II*, 932 F.2d at 180 (citing *Piper Aircraft Co. v. Reyno*r, 454 U.S. at 254 n.22). However, if the alternative forum offers a clearly unsatisfactory remedy, for instance when the subject matter of the suit is not cognizable in the alternative forum, such forum will nonetheless be inadequate. *Piper Aircraft Co. v. Reyno*r, 454 U.S. at 254 n.22.

To establish Australia as an available forum, Alcoa must first show that it is amenable, or that it will agree to submit, to process in Australia.  Alcoa admits, however, that it is subject to the jurisdiction of the courts of Western Australia with regard to the consolidated litigations. *See* Alcoa Brief in Support, *Auxer* Action, p. 16; Alcoa Brief in Support, *Angi*, *Alpin*, *Bellairs* and *Barradeen* Actions, p. 18.  Moreover, it appears that Alcoa is subject to process in Western Australia based upon Australian legal authority.  *See* Alco Exhibit 5, Allanson Affidavit ¶¶ 7-10[5]. Notwithstanding Alcoa's admission and the averments of Mr. Allanson's affidavit, this Court shall require that Alcoa submit to the jurisdiction of the appropriate court as a condition of the dismissal based upon *forum non conveniens*.[6]

To demonstrate that Plaintiffs' claims are cognizable in the Australian courts such that

---

[5]    Plaintiffs question the credibility and sufficiency of Allanson's affidavit.  This Court however finds such objections to be without merit.

[6]    Alcoa, however, shall not be hindered in any way from moving for a dismissal of the actions in Australia based upon the same arguments before this Court in its motions to dismiss.

they can obtain appropriate redress, Alcoa must establish that Australia permits litigation of the subject matter of the dispute, that it provides adequate procedural safeguards, and that the remedy available in the alternative forum is not so inadequate as to amount to no remedy at all. *See Piper Aircraft Co. v. Reynor*, 454 U.S. at 255, n. 22.  While foreign forums completely prohibiting any meaningful "litigation of the subject matter" cannot qualify as adequate alternatives, the unavailability of a certain theory for recovery or the possibility of lesser damages cannot render the alternate forum inadequate. *Piper Aircraft Co. v. Reynor*, 454 U.S. at 254-255  n.22. The Court in *Piper* held that the alternate forum was not inadequate where there was "no danger that [plaintiffs would] be deprived of any remedy or treated unfairly." *Id.* at 255.  The first prong of the *forum non conveniens* analysis does not obligate the courts to "conduct[] complex exercises in comparative law." *Id.* at 251. In fact, the *Piper* Court favored dismissal where the court would have to engage in "untangling problems in conflict of laws, and in law foreign to itself." *Id.*

There is no dispute that Australian recognizes the tort of negligence as part of its common law. Allanson Affidavit ¶ 11; *See generally Auxer* Exhibit 3, Droppert Affidavit; *Auxer* Exhibit 4, Owen-Conway Affidavit.  Moreover, the Court finds Plaintiffs' arguments regarding the inadequacies of Australian procedure and remedy to be without merit. Disparities between the laws of the chosen and alternative forums, similar to those referenced by Plaintiffs, do not render the alternate forum inadequate. *Piper Aircraft Co. v. Reynor*, 454 U.S. at 250;  *Windt v. Qwest Communs. Int'l, Inc.*, 544 F. Supp. 2d 409, 418 n.12 (D. N.J. 2008).

Plaintiffs argue that Australia is unavailable to them as a forum because the applicable Australian statute of limitations would bar many of their claims.  The fact that some of Plaintiffs' claims would be time-barred in Australia carries little weight in this Court's analysis as Pennsylvania's borrowing statute[7] instructs this Court to look to the statute of limitations of the jurisdiction where the cause of action "arose," if that foreign state's statute of limitations would

---

[7]    Pennsylvania's Uniform Statute of Limitations on Foreign Claims Act, 42 PA. CONS. STAT. ANN. § 5521.

bar the claim[8]. *See Hafer v. Firestone Tire & Rubber Co.*, 523 F. Supp. 1216 (E.D. Pa. 1981)(holding that a driver's cause of action, whether in tort or in contract, arose in Quebec and was barred by the Quebec's one year statute of limitations; because the cause of action was barred in the jurisdiction in which it arose, it was likewise barred in Pennsylvania by the application of Pennsylvania's borrowing statute).  Under Pennsylvania's borrowing statute  "[t]he period of limitation  applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of the Commonwealth, whichever first bars the claim." 42 PA. CONS. STAT. ANN. § 5521(b).  A claim "accrues" for purposes of section 5521(b) in the state "where as well as when the final significant event that is essential to a suable claim occurs." *McGinley v. McGinley*, 252 Fed. Appx. 426, 427 (3d Cir.  2007)(quoting *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 660 (3d Cir. 1980).

There is no question that the final significant event in the Consolidated Actions, which is injury in every instance, occurred in Australia.  Therefore, to the extent any of Plaintiffs' claims are time-barred in Australia, they would be barred in either this Court or a Pennsylvania state court. The fact that the applicable Australian statute of limitations may bar many of the claims set forth in the Consolidated Actions does not make Australia an inadequate forum.

Plaintiffs also contend that Australian pretrial procedure is inadequate because of the unavailability of a general discovery deposition process. The taking of depositions from a party, or an expert or lay witness is not used by courts in Western Australia other than for medical witnesses, when examining on relatively non-controversial matters, who are unavailable to attend trial or for plaintiffs who are dying. *See* Droppert Affidavit ¶ 9.  All parties though are subjected to the same restrictions, therefore there is no prejudice. A restriction on pretrial discovery does not make Australia an inadequate forum.

Neither the fee-shifting, *i.e.* loser pays, arrangement in Australia jurisprudence nor its

---

[8]    This Court must apply the choice of law rules of the forum state, which is Pennsylvania in the instant case. *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994).

lack of contingency fee agreements render Australia inadequate as an alternative forum. The potential for taxation of attorney's fees against the losing party acts as a double-edged sword. Although such arrangements are a risk to a plaintiff who loses, it nonetheless provides an avenue for successful plaintiffs to recover their attorney's fees. Moreover, the Supreme Court specifically mentioned fee shifting and contingent fee agreements as reasons American courts are so attractive to foreign plaintiffs and why dismissal might be appropriate to prevent further congestion in the United States courts. *See Piper Aircraft Co. v. Reyno*, 454 U.S. at 252 n.18 ("unlike most foreign jurisdictions, American courts allow contingent attorney' fees, and do not tax losing parties with their opponents' attorney's fees."). Other appellate decisions have viewed the contingent fee argument to be of little significance in making the *forum non conveniens* determination. *See e.g. Coakes v. Arabian American Oil, Co.*, 831 F.2d 572 (5th Cir. 1987); *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608 (6th Cir. 1984).

For the foregoing reasons, the Court finds that Australia is an adequate alternative forum[9]. The Court must now  balance certain private and public interest factors.  Whether the burden of litigating a plaintiffs claim in the United States is sufficiently heavy to warrant dismissal depends upon a balancing of  "'private interest factors' affecting the convenience of the litigants, and . . . 'public interest factors' affecting the convenience of the forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. at 241 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 508-09 (1947)).  In its balancing, if the Court finds that "the relevant private and public interest factors are in equipoise, or even if they lean only slightly toward dismissal," the motion to dismiss must be denied. *See Lacey II*, 932 F.2d at 180; *see also Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 613 (3d Cir. 1991).

---

[9]    Other federal courts have found Australia to be an adequate alternative forum and dismissed on grounds of *forum non conveniens*. *See e.g. Mastafa v. Australian Wheat Bd. Ltd.*, 2008 U.S. Dist. LEXIS 73305 (S.D.N.Y. Sept. 25, 2008)*;  Ashley v. Dow Corning Corp. (In re Silicone Gel Breast Implants Prods. Liab. Litig.)*, 887 F. Supp. 1469 (N.D. Ala. 1995); *Intercontinental Dictionary Series v. De Gruyter*, 822 F. Supp. 662 (C.D. Cal. 1993); *Allstate Life Ins. Co. v. Linter Group, Ltd.*, 782 F. Supp. 215, 224 (S.D.N.Y. 1992); *Interpane Coatings, Inc. v. Australia & New Zealand Banking Group Ltd.*, 732 F. Supp. 909 (N.D. Ill. 1990).

Here the Court finds that the private and public factors overwhelmingly favor dismissal.

        C.    <u>Private Interest Factors</u>

        The private interest factors to be considered in determining whether the chosen forum is appropriate include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of view of premises, if view would be appropriate to the action; (5) enforceability of judgments; and (5) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *Gulf Oil Corp. v Gilbert*, 330 U.S. at 508.

        One of the most significant factors this Court must consider is the relative ease of access to sources of proof.  Plaintiffs seek damages from Alcoa for various injuries allegedly caused by exposure to emissions from alumina refineries located in Western Australia.  Aside from discovery directly from the individual Plaintiffs, 242 of whom reside in Western Australia, regarding where and to what the individual was exposed, duration of the exposure, injury, impact on individual lifestyle etc., Alcoa will need access to non-party witnesses regarding the alleged injuries, medical treatment, prognoses, local climatic anomalies, refinery operations, and Western Australia environmental and public health regulations and enforcement thereof. Moreover, experts will be needed to testify about damages, such as the future costs the injured Plaintiffs will incur as a result of their injuries. All of these sources of proof are located in Australia.

        Plaintiffs, on the other hand, argue that there are important witnesses and/or documents located in Pennsylvania that are critical to establishing liability.  The Court finds, however, that documentary evidence from a party is much more accessible than the evidence from Australian non-parties required by Alcoa to defend these actions. The materiality and importance of the anticipated witnesses' testimony are much more accessible and convenient to the alternate forum. As such, this factor weighs heavily in favor of dismissal.

        The next factor this Court must consider is the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses.

Federal Rule of Civil Procedure 45(b)(2) states that "a subpoena may be served at any place . . . outside [the district of the issuing court] but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection." Fed. R. Civ. P. 45(b)(2): *see also Tannenbaum v. Brink*, 119 F. Supp. 2d 505, 512 (E.D. Pa. 2000) (explaining that if witnesses who are "spread out across the United States, Europe and the Caribbean . . . . were unwilling to appear, a Pennsylvania court could not compel them to do so"). This Court, therefore, cannot compel discovery and testimony from any of the many non-party witnesses who reside in Western Australia.

The United States and Australia are signatories to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention") which serves as an alternative or "permissive" route to the Federal Rules of Civil Procedure for the taking of evidence abroad from litigants and third parties alike. *See Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 538 (1987). The Hague Convention allows judicial authorities in one signatory country to obtain evidence located in another signatory country for use in judicial proceedings, commenced or contemplated. Hague Evidence Convention, Art. 1.  There are three available methods of taking evidence pursuant to the Convention: (1) by a Letter of Request or "letter rogatory" from a U.S. judicial authority to the competent authority in the foreign state …; (2) by an American or foreign diplomatic or consular officer or agent after permission is obtained from the foreign state; and (3) by a private commissioner duly appointed by the foreign state.  *See Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 254 F. Supp. 2d 469, 472 (D. Del. 2003)(citation omitted).

Pursuant to the Convention, a Letter of Request must provide the contracting state with specific information regarding the lawsuit and the information sought. Hague Evidence Convention, Art. 3. The signatory state, upon receipt and consideration, "shall [then] apply the appropriate measure of compulsion" as is customary "for the execution of orders issued by the authorities of its own country." Hague Evidence Convention, Art. 10. Signatory states may refuse

16

to execute a Letter of Request if the request "does not fall within the function of the judiciary" or if the "sovereignty or security" of the contracting state would be prejudiced but, execution "may not be refused solely on the ground that under its internal law the State of execution claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not admit a right of action on it." Hague Evidence Convention, Art. 12.   Further, The person to whom the discovery requests in a Letter of Request are directed has the right to "refuse to give evidence" to the extent that the person has a privilege under the law of the State of execution or the State of origin. Hague Evidence Convention, Art. 11.

"[A] party seeking the application of the Hague Convention procedures, rather than the Federal Rules of Civil Procedure, bears the burden of persuasion." *In re Global Power Equip. Group Inc.*, 418 B.R. 833, 847 (Bankr. D. Del. 2009)(quoting *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 435 (E.D.N.Y. 2008)). The  burden, however, is not great as the "Convention procedures are available whenever  they will facilitate the gathering of evidence by the means authorized in the Convention." *Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. at 541. In making its decision, a Court must consider "principles of international comity, the relative interests of the parties including the interest in avoiding abusive discovery, and the ease and efficiency of alternative formats for discovery." *Madanes v. Madanes*, 199 F.R.D. 135, 141 (S.D.N.Y. 2001).

Resort to the Hague Evidence Convention would be  appropriate for witnesses who are not parties to the lawsuit, have not voluntarily subjected themselves to discovery, are citizens of Australia, and are not otherwise subject to the jurisdiction of the Court. In this instance, Alcoa may be forced to employ the Hague Convention to obtain discovery from hundreds of witnesses. The procedures outlined above would be an incredible strain on the efficiency and resources of the Court as well as the parties.  Again, the Court finds that this factor weighs in favor of dismissal.

The remaining private factors also weigh in favor of dismissal. Alcoa argues that access

to other evidence including geological, climatological and atmospheric conditions that Plaintiffs

contend contributed to their exposure favors litigation in Australia. The Court agrees that proof

that Plaintiffs were injured due to the interaction of these factors with the emissions from the

alumina refineries in Western Australia present serious problems if Pennsylvania remains the

forum for the Consolidated Actions.

Alcoa also argues that if a "view of the premises" is necessary, it will be impossible if the

trial is held in Pennsylvania.  The Court gives very little weight to this factor.  It is a rare

occasion indeed, when the Court finds it necessary to transport a jury and court personnel to the

scene of an incident related to alleged exposure to harmful pollutants.  In the event, however, that

a jury view does become relevant, this factor must weigh in favor of an Australian forum.

    D.    Public Factors

Similar to the balancing of private interest factors, "[a] defendant also bears the burden to

show that the public-interest factors support dismissal."  *In re Corel Corp., Secs. Litig.*, 147 F.

Supp. 2d 363, 367 (E.D. Pa. 2001). The public interest factors include the following:

> the administrative difficulties flowing from court congestion; the
> local interest in having localized controversies decided at home;
> the interest in having the trial of a diversity case in a forum that is
> at home with the law that must govern the action; the avoidance of
> unnecessary problems in conflict of laws, or in the application of
> foreign law; and the unfairness of burdening citizens in an
> unrelated forum with jury duty.

*Id.* (quoting *Piper Aircraft Co. v. Reyno*r, 454 U.S. at 241 n.6).  The Third Circuit has further

held "that the district court must consider the locus of the alleged culpable conduct, often a

disputed issue, and the connection of that conduct to plaintiff's chosen forum." *Lony II*, 935 F.2d

at 612.

Plaintiffs in these actions are seeking recovery for injuries allegedly caused by exposure

to emissions from alumina refineries owned and operated by AAL in Australia. Clearly, the locus

of the culpable conduct at issue in these cases is the location of the occurrence of  injury. Thus,

the "local interest" in having the case heard in an Australian forum is very strong. With regard to

18

the comparative interests of Australia and Pennsylvania, it must be further noted that Pennsylvania has no connection with the facts giving rise to the causes of action except that one (1) Plaintiff, out of two hundred forty-three (243), decided to move to Pennsylvania after the incident causing injury. On the other hand, Western Australia has considerable interest[10] in: the health and welfare of local residents; local environmental concerns; and regulation of local industries.  Pennsylvania has no such comparable interests.

In addition to the important Australian interests at issue, there is an "appropriateness . . . in having the trial of a diversity case in a forum that is at home with the [] law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 509.  Based upon a Pennsylvania choice of law analysis, there is a very high probability that this Court would be applying Australian law to the claims at issue. "[T]he need of an American court to apply foreign law is an appropriate concern on a *forum non conveniens* motion, and can in fact point to dismissal." *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 509; *also see Piper Aircraft v. Reyno*, 454 U.S. at 260.  This factor, therefore, favors dismissal in deference to an Australian forum.

The factor regarding relative court congestion has little or no effect on this analysis. All courts are busy, and though these cases most certainly will involve complex matters, there is no evidence before the Court regarding relative congestion of the dockets of the courts of Western Australia as compared to the docket of this Court.

This Court has determined that an adequate alternative forum exists in Australia, and, upon balancing of the private and public interest factors, giving due consideration of Plaintiffs' choice of forum in the Western District of Pennsylvania, the Court finds that the factors weigh heavily in favor of dismissal.  The Court, therefore, shall grant the Alcoa's' motion to dismiss on

---

[10]    According to Plaintiffs, the Western Australian government has conducted extensive investigations of the potential effects of the Wagerup refinery's emissions and has been monitoring health effects in the vicinity of the refinery. *Angi* Complaint ¶¶ 589-590*;  Alpin* Complaint ¶¶ 83-84; *Bellairs* Complaint ¶¶ 101-102; *Barradeen* Complaint ¶¶ 40-41.

grounds of *forum non conveniens*.

## V.   CONCLUSION

Based upon matters of judicial economy, convenience, and  fairness, this Court chose to dispose of the motion to dismiss on grounds of *forum non conveniens* before addressing the novel, and more difficult, issues of subject-matter jurisdiction.  As set forth above, the Court finds that an adequate alternative forum exists in Australia, and upon balancing of the private and public interest factors, finds that dismissal of the Consolidated Actions is appropriate based upon grounds of *forum non conveniens*.

Having found in favor of Alcoa on the *forum non conveniens* issue, this Court will deny Alcoa's Motions to Dismiss for Failure to State a Claim and  Plaintiffs' Motions to Remand to State Court as moot, without prejudice to raise such issues should these actions be returned to the Court.  An appropriate Order follows.

    s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:   William R. Caroselli, Esquire
      Kelly L. Enders, Esquire
      Caroselli, Beachler, McTiernan & Conboy
      Seventh Floor
      20 Stanwix Street
      Pittsburgh, PA 15222

      Rene P. Tatro, Esquire
      Tatro Tekosky Sadwick LLP
      Suite 4270
      333 S. Grand Avenue
      Los Angeles, CA 90071

      Richard W. Hosking, Esquire
      Thomas M. Reiter, Esquire
      James C. Swetz, Esquire
      Kirkpatrick & Lockhart Preston Gates Ellis, LLP
      Henry W. Oliver Building
      535 Smithfield Street
      Pittsburgh, PA 15222

Lori E. Jarvis, Esquire
Hunton & Williams
Riverfront Plaza
East Tower
951 East Byrd Street
Richmond, VA 23219